# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

SUSAN ANNETTE EVANS,           )
                               )
       Plaintiff,         )
                               )
v.                             )   Case No. CIV-15-456-SPS
                               )
NANCY A. BERRYHILL,            )
Acting Commissioner of the Social )
Security Administration,[1]    )
                               )
       Defendant.         )

## OPINION AND ORDER

The claimant Susan Annette Evans requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of

---

[1] On January 20, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn W. Colvin as the Defendant in this action.

such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[2] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born June 30, 1963, and was fifty years old at the time of the administrative hearing (Tr. 44). She has a master's degree in counseling, and has worked as a caseworker, therapist, and mental retardation aide (Tr. 47, 68). The claimant alleges that she has been unable to work since August 4, 2011, due to migraine headaches, back problems, hypertension, bipolar disorder with psychotic features, anxiety, arthritis, degenerative scoliosis, an enlarged heart, attention deficit/hyperactivity disorder, dizziness, sleep apnea, pain and numbness in her hands and feet, and shortness of breath (Tr. 179).

**Procedural History**

On November 30, 2011, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Bernard Porter conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated March 24, 2014 (Tr. 18-34). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity ("RFC") perform a limited range of light work, *i. e.*, she could lift/carry/push/pull twenty pounds occasionally and ten pounds frequently; could sit/stand/walk for six hours each during an eight-hour workday; could frequently handle, finger, feel, balance, stoop, and crouch; could occasionally kneel, use hand and foot controls, and climb ramps or stairs; but could never crawl, climb ladders or scaffolds, work at unprotected heights or around moving mechanical parts, or work in environments with temperature extremes or exposure to dust, fumes, and gasses (Tr. 24). The ALJ also found the claimant required a sit/stand option allowing for a change in position at least every thirty minutes (Tr. 24). The ALJ further found the claimant could perform simple tasks and simple work related decisions with no interaction with the general public (Tr. 24). Due to episodic symptomology, the ALJ also found the claimant would be off task up to five percent of the workday (Tr. 240). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work that she could perform in the national economy, *e. g.*, inspector packer, small product assembler, and electrical accessory assembler (Tr. 32-33).

## Review

The claimant contends that the ALJ erred by failing to: (i) adequately account for her moderate difficulties with concentration, persistence, or pace; and (ii) properly evaluate the opinion of Dr. Everett Bayne. The Court agrees that the ALJ erred in

analyzing Dr. Bayne's opinion, and the decision of the Commissioner must therefore be reversed and the case remanded to the ALJ for further proceedings.

The ALJ determined that the claimant had the severe impairments of hypertension, lumbar disc disease, migraine headaches, degenerative scoliosis, early chronic obstructive pulmonary disease, obesity, major obstructive sleep apnea, history of polysubstance abuse, bipolar disorder, schizoaffective disorder, attention deficit/hyperactivity disorder, anxiety disorder, and posttraumatic stress disorder (Tr. 20). The relevant medical evidence reveals that the claimant received inpatient mental health care on two separate occasions, and subsequently required ongoing medication management (Tr. 420-40, 61, 575-92). The claimant was first hospitalized at Rolling Hills Hospital from August 4, 2011, through August 22, 2011, due to depression, suicidal ideation, and hallucinations (Tr. 430-34). The claimant's treatment consisted of medication management as well as group and individual therapy (Tr. 431-33). At discharge, Dr. Bayne noted the claimant's hands were trembling, and that she had no suicidal ideations or intent (Tr. 433). He diagnosed her with bipolar disorder, mixed, with psychosis, and anxiety disorder (Tr. 433). The claimant was next treated at Rolling Hills Hospital from September 9, 2011, through October 3, 2011, after police discovered her "wandering around town half naked." (Tr. 420-24). Upon admission, Dr. Bayne noted the claimant was confused, forgetful, and distracted; had delusions; and that her immediate recall and recent and remote memory were poor (Tr. 421). During treatment, which also included medication management and therapy, the claimant became more lucid, could carry on a conversation, and had fewer loose associations (Tr. 422-23). At discharge, Dr. Bayne noted the

claimant was pleasant, smiling, and quiet, but would engage in conversation (Tr. 423). He diagnosed her with bipolar disorder, depressed, with psychotic features, and delirium (Tr. 423).

On October 10, 2011, Dr. Bayne completed a Medical Source Statement wherein he opined that the claimant could not remember, comprehend, and carry out simple and complex instructions on an independent basis; could not respond to work pressure, supervision, and coworkers; but could handle funds (Tr. 442). Dr. Bayne's observations on this form very closely match those he made upon admitting the claimant to Rolling Hills Hospital in September 2011, except he additionally described the claimant's daily activities as "does not want to do anything no interest." (Tr. 420-23, 442).

Dr. Raymond Fuchs conducted a psychological consultative examination on January 1, 2012 (Tr. 463-69). Dr. Fuchs observed that the claimant was alert, attentive, and oriented, and displayed no elements of possible distraction or psychotic-like decompensations (Tr. 463, 467). He noted she had a very flat affect, depressed and sad mood, downward gaze, and a somewhat threat-sensitive reaction, but indicated that her expressiveness increased through the interview, and that some of her threat sensitivity may result from excessive substance abuse (Tr. 465, 467). As to the claimant's speech, Dr. Fuchs noted it was brief, to the point, somewhat tense, and downcast in volume and tone, but increased in positivism and force as the interview progressed (Tr. 467). As to the claimant's cognitive functioning, he indicated her intelligence and fund of knowledge were average, and her recall and memory appeared normal (Tr. 467). The claimant's thought processes were conversational (but minimal), non-tangential, and without

decompensating elements (Tr. 467). Additionally, the claimant was focal and had topically appropriate thought content without exaggerations, preoccupations, fragments, or loose associations (Tr. 467). Dr. Fuchs diagnosed the claimant with polysubstance abuse, chronic, apparently in remission, possible impact on psychosis; bipolar disorder with psychotic features; and major depressive disorder, recurrent (Tr. 468). He opined that the claimant's ability to concentrate and complete tasks was "intermittently various from adequate to good to extremely impaired by internal preoccupations, trauma, and possible decompensating elements of early states of psychotic-like disability," and that her judgment was somewhat impaired by episodes of psychosis, but was clear and thoughtful during episodes of positive mental health (Tr. 468). Dr. Fuchs indicated the claimant's prognosis was poor to fair at best (Tr. 468).

At the administrative hearing, the claimant testified as to her past work history, her impairments, and her medical treatment (Tr. 40-72). She stated her mental impairments were the primary reason she could not work (Tr. 51). She further stated she gets confused easily, has not driven in more than a year due to anxiety, and that her anxiety increases when she has to "deal with people." (Tr. 52). Regarding the symptoms related to her anxiety, the claimant indicated she cries frequently, experiences chest pain and shortness of breath, and hurts "all the time." (Tr. 53). The claimant testified that treatment has not helped "at all," and that her medications are only somewhat effective (Tr. 53). She stated her memory decreased as her overall mental health decreased, and that she was unable to recall any details from her psychotic episodes (Tr. 60). When asked if she could maintain attention and concentration during a thirty minute television

show, the claimant indicated that she could not always do so because of distracting hallucinations (Tr. 60). When asked if she watched movies, the claimant said she didn't because she is unable to stay focused long enough or recall what the movie was about (Tr. 63). The claimant indicated she experiences hallucinations daily, and that they are triggered when people around her argue (Tr. 65).

In his written decision, the ALJ summarized the medical evidence, the claimant's hearing testimony, a Third Party Function Report submitted by her husband, and a letter from her counselor (Tr. 24-32). The ALJ gave little weight to Dr. Bayne's October 10, 2011, Medical Source Statement because it was inconsistent with his October 3, 2011, discharge summary and Dr. Fuchs' exam (Tr. 31). Nonetheless, the ALJ limited the claimant to simple tasks and simple work related decisions with no interaction with the general public, and found that she would be off task up to five percent of the workday due to episodic symptomology (Tr. 31).

As an initial matter, the Court notes that the ALJ found Dr. Bayne never established a treatment relationship with the claimant because he only saw her during her inpatient hospitalizations (Tr. 31). The Court also notes that as part of her assertion that the ALJ did not properly analyze Dr. Bayne's opinion, the claimant argues that Dr. Bayne was a treating physician. The Court need not address this issue, however, because the ALJ's analysis of Dr. Bayne's opinion is erroneous regardless of how his treatment is categorized. "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific

factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004), *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).

Although the ALJ referenced the correct analysis at the outset of step four, and thoroughly summarized Dr. Bayne's Medical Source Statement, he provided no analysis at all in relation to the pertinent factors. This was important because Dr. Bayne raised questions about the claimant's ability to perform skilled *or* unskilled work. Additionally, The ALJ rejected Dr. Bayne's opinion partly because his October 2011 discharge summary reflected improvement in the claimant's mental status upon discharge from inpatient care (Tr. 31). In doing so, however, the ALJ disregarded the highly structured environment the claimant experienced during her lengthy hospitalization. *See, e. g.*, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00 ("[A claimant's ability to complete tasks in settings that are highly structured, or that are less demanding or more supportive than

typical work settings does not necessarily demonstrate [a claimant's] ability to complete tasks in the context of regular employment during a normal workday or workweek."). Lastly, the ALJ engaged in improper picking and choosing when he referenced only some of Dr. Fuchs' report as support for his finding that Dr. Bayne's opinion was inconsistent (Tr. 31). The ALJ noted Dr. Fuchs' finding that the claimant was "alert, oriented, and displayed no elements of possible distraction or psychotic decompensations with appropriate recall, memory and thought content," but ignored his opinions as to her ability to concentrate and complete tasks, judgment, and prognosis (Tr. 467-68). *See, e.g., Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."). The ALJ should have explained why he found certain aspects of Dr. Fuchs' report persuasive but not others. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("[T]he ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' RFC assessment while appearing to adopt the others. . . . [T]he ALJ did not state that any evidence conflicted with Dr. Rawlings' opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of Dr. Rawlings' restrictions but not others.").

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the decision of the Commissioner is therefore not supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is

accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

    **DATED** this 27th day of March, 2017.

                                                                        _____
                                                                         **STEVEN P. SHREDER**
                                                                         **UNITED STATES MAGISTRATE JUDGE**